```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION
```

JOHN ALLEN,

    Plaintiff,

v.                                    Case No. 8:20-cv-1846-T-33JSS

RICHARD PACHECO,
COREY SUTTLE, and
THE CITY OF LAKELAND,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Corey Suttle's Motion to Dismiss Counts II, IV, VI, IX, and X of the Second Amended Complaint (Doc. # 38) and the City of Lakeland's Motion to Dismiss Count VIII (Doc. # 37), both filed on November 12, 2020. Plaintiff John Allen responded on November 25, 2020. (Doc. # 39). For the reasons that follow, Officer Suttle's Motion is granted in part and denied in part and the City's Motion is granted.

**I.   Background**

In December 2018, "Allen, a police officer for the University of South Florida Police Department, was a passenger in a vehicle which was stopped by members of the Lakeland Police Department for a DUI investigation." (Doc. #

35 at 3). "Officer Suttle, a Drug Recognition Expert, initiated the stop to investigate the driver of the vehicle," and other officers arrived during the investigation. (Id.). "Officer Sirera told [] Allen not to scream out or interfere with the DUI investigation of the driver of the vehicle, which was being conducted by Officer Suttle." (Id.). In response, "Allen was respectful and calm and assured Officer Sirera that he would not interfere with the investigation." (Id.). He "behaved as promised." (Id.).

"Once the driver of the vehicle was placed in handcuffs and in the back of the police cruiser, Officer Suttle started berating and demeaning [] Allen for no reason at all." (Id. at 4). "Allen responded calmly and was continuously respectful to his fellow law enforcement officers, even when shown great disrespect." (Id.).

The second amended complaint alleges that, "[o]nce the driver was arrested, the basis for the stop was complete and therefore [] Allen should have been free to leave the scene." (Id.). But, allegedly, "the berating continued" and "Allen asked the officers multiple times about the basis of his detainment," without receiving an answer. (Id.).

Officer Suttle allegedly yelled the following at Allen: "[Y]ou're lucky. You just barely missed the threshold for me

taking your ass to jail." (Id.). According to the second amended complaint, this statement shows that "Officer Suttle would agree that [] Allen had not committed any crime at this point." (Id.). "Officer Suttle and the other officers present continued to berate and demean [] Allen, asking him how long he has been an officer. [] Allen continued to remain calm and politely answered the officers' questions." (Id.).

"The berating of [] Allen by Officer Suttle and the other officers continued and as a result, [] Allen calmly asked Officer Pacheco, 'how long have you been a police officer.'" (Id.). Officer Suttle then allegedly yelled "You know what, get him, get him." (Id.). "Immediately thereafter, Officer Pacheco states 'I'll take him, I'll take him,' and placed [] Allen under arrest for resisting arrest." (Id.). "There was no other act that occurred between [] Allen's single question and his arrest." (Id.). According to the second amended complaint, "Officer Suttle was aware that [] Allen was being arrested and was standing right next to Officer Pacheco when Officer Pacheco placed [] Allen in handcuffs." (Id.).

"As a result of the arrest, [] Allen spent 1 day in jail and was placed on Administrative Leave at the University of South Florida Police Department from December 4, 2018 - January 21, 2018." (Id.). "On January 8, 2019, the State

Attorney's Office made the decision to no file the charges against [] Allen." (Id. at 5).

Allen initiated this action on August 7, 2020, against Officer Suttle, Officer Pacheco, and the City. (Doc. # 1). He filed an amended complaint on August 28, 2020 (Doc. # 8), and Officers Suttle and the City moved to dismiss certain claims. (Doc. ## 21, 22). The Court granted those motions on October 19, 2020, dismissing the claims at issue with leave to amend. (Doc. # 32).

Allen filed his second amended complaint on October 29, 2020, asserting the following claims: Section 1983 false arrest against Officer Pacheco (Count I); Section 1983 false arrest against Officer Suttle (Count II); Section 1983 violation of freedom of speech against Officer Pacheco (Count III); Section 1983 violation of freedom of speech against Officer Suttle (Count IV); state law false arrest against Officer Pacheco (Count V); state law false arrest against Officer Suttle (Count VI); state law false arrest against the City premised on Officer Pacheco's actions (Count VII); state law false arrest against the City premised on Officer Suttle's actions (Count VIII); Section 1983 failure to protect claim against Officer Suttle (Count IX); and Section 1983 unlawful seizure claim against Officer Suttle (Count X). (Doc. # 35).

Now, Officer Suttle and the City seek dismissal of all claims against Officer Suttle and the false arrest claim against the City based on Officer Suttle's conduct. (Doc. ## 37, 38). Allen has responded (Doc. # 39), and the Motions are ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

5

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

Officer Suttle seeks dismissal of all claims against him. The City seeks dismissal of the state false arrest claim against it premised on Officer Suttle's actions. The Court will address each claim in turn.

#### A. Section 1983 False Arrest Claim

In Count II, Allen asserts a claim under Section 1983 for false arrest against Officer Suttle. (Doc. # 35 at 5-6).

"In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a person acting under color of state law; (2) deprived him or her of a right secured by the Constitution." Jones v. Brown, 649 F. App'x 889, 890 (11th Cir. 2016). False arrest is "a violation of the Fourth Amendment and a viable claim under [Section] 1983." Id. "A claim for false arrest arises when an arrest occurs without a warrant and without probable cause." Id.

"[T]o establish [Section] 1983 liability, a plaintiff must show 'proof of an affirmative causal connection' between

6

a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.'" Simmons v. Eddins, No. 3:15CV163/MCR/EMT, 2015 WL 10433461, at *3 (N.D. Fla. Dec. 14, 2015)(quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)), report and recommendation adopted, No. 3:15CV163/MCR/EMT, 2016 WL 868235 (N.D. Fla. Mar. 4, 2016). "The plaintiff must thus show that the defendant actually made the arrest (or, where the arrest was pursuant to a warrant, that the defendant swore out the affidavit supporting the arrest warrant), or that the defendant was part of the arresting officer's chain of command authorizing the arrest." Id. "Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action." Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010).

Here, the second amended complaint does not allege that Officer Suttle actually arrested Allen. Instead, it alleges that Officer Suttle had "berate[d] and demean[ed]" Allen and encouraged Officer Pacheco to arrest Allen by stating "You know what, get him, get him," at which point Officer Pacheco

7

"placed [] Allen under arrest." (Doc. # 35 at 4). Thus, the second amended complaint alleges merely that Officer Suttle was present at the scene and encouraged Officer Pacheco to arrest Allen. There is no allegation that Officer Suttle was part of Officer Pacheco's chain of command.

These allegations are insufficient to state a claim for false arrest against Officer Suttle that is not based on the failure to intervene theory. See Dawson v. Jackson, No. 2:16-CV-01738-RDP, 2017 WL 3620254, at *6 (N.D. Ala. Aug. 23, 2017)("Plaintiff's claim of false arrest against Defendant Watson falters because Watson was not the person that performed the arrest. The video clearly shows that it was Defendant Jackson who arrested Plaintiff. . . . While Watson called Jackson over and informed him that Plaintiff was obstructing government operations, Watson himself did not perform the arrest or in any way command Jackson to arrest Plaintiff."), aff'd, 748 F. App'x 298 (11th Cir. 2018). Officer Suttle's comment, suggesting that he wanted a fellow officer to arrest Allen, does not alter the Court's analysis. See Brown, 608 F.3d at 737 (holding that false arrest claim against non-arresting officer failed even though that officer said "arrest [plaintiff], too").

Additionally, because Allen has not plausibly alleged a constitutional violation in Count II, Officer Suttle is entitled to qualified immunity on Count II. See Id. ("Because Norris did not arrest Sonia and had no supervisory control over the officer who did, qualified immunity is appropriate."); see also Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019)("[I]t is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" (citation omitted)), cert. denied, 207 L. Ed. 2d 1051 (June 15, 2020).

Count II is dismissed with prejudice.

### B.  Section 1983 Failure to Protect Claim

In Count IX, Allen argues that Officer Suttle violated his rights by "failing to prevent the unlawful arrest of [Allen] when he was in a time and place when he could have done so." (Doc. # 35 at 12).

The Eleventh Circuit has "not preclude[d] all failure to intervene claims against a present, but non-arresting, officer in false arrest cases" and has said that "a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way." Wilkerson v. Seymour,

9

736 F.3d 974, 980 (11th Cir. 2013). Regarding the failure to intervene theory, one district court has explained:

> In contrast to excessive force cases, where the Eleventh Circuit has recognized a duty to intervene by non-participant officers, the liability of present, non-arresting officers in the context of false arrest cases depends on "both the degree of participation in the arrest and the amount of information available to the non-arresting officer, because a non-arresting officer does not have a duty to investigate the basis of another officer's arrest."

Johnson v. DeKalb Cnty., 391 F. Supp. 3d 1224, 1246 (N.D. Ga. 2019)(quoting Wilkerson, 736 F.3d at 980), appeal dismissed sub nom. Johnson v. Fulton, No. 19-12552-GG, 2020 WL 3865138 (11th Cir. Jan. 8, 2020).

The allegations of the second amended complaint on the failure to intervene theory plausibly state a claim. Allen alleges that Officer Suttle encouraged fellow officers to arrest Allen and "was standing right next to Officer Pacheco" when Officer Pacheco arrested Allen. (Doc. # 35 at 4). This allegation raises the inference that Officer Suttle could have intervened in the arrest but chose instead to encourage it. Furthermore, the second amended complaint illustrates that Officer Suttle was well aware that the sole event preceding Allen's arrest was Allen's calmly asking Officer Pacheco how long he had been a police officer. (Id.). Given

10

these allegations, Allen plausibly alleges that Officer Suttle "was aware there was not even arguable probable cause to arrest [Allen]." (Id. at 12).

Accordingly, the Motion is denied as to Count IX. Officer Suttle may raise his arguments again at the summary judgment stage.

### C. Section 1983 Freedom of Speech Claim

In Count IV, Allen asserts a claim under Section 1983 against Office Suttle for violating his First Amendment rights. (Doc. # 35 at 8-9).

It is true that "law enforcement officers may not arrest an individual as a way 'to thwart or intrude upon First Amendment rights otherwise being validly asserted.'" Toole v. City of Atlanta, 798 F. App'x 381, 387 (11th Cir. 2019)(citation omitted). Nevertheless, this claim fails for the same reason as the Section 1983 false arrest claim: there is no allegation that Officer Suttle actually arrested Allen. On the contrary, the second amended complaint is clear that Officer Pacheco arrested Allen allegedly because of Allen's speech.

While Count IX's allegations of a failure to intervene in a false arrest are sufficient under the case law, the parties have not presented case law — nor is the Court aware

11

of any — supporting that a bystander officer may be liable for failure to intervene in the violation of a suspect's First Amendment rights.

Thus, Count II is dismissed with prejudice.[1]

### D. Section 1983 Unlawful Seizure Claim

In Count X, Allen alleges that Officer Suttle unlawfully seized him by detaining him after the driver of the vehicle was arrested. (Doc. # 35 at 13).

"The Fourth Amendment protects individuals from unreasonable search and seizure. A traffic stop is a seizure within the meaning of the Fourth Amendment." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). "Because a routine traffic stop is only a limited form of seizure, it is

---

[1] Officer Suttle did not argue that he is entitled to qualified immunity for the Section 1983 First Amendment claim, nor for the Section 1983 failure to intervene or unlawful seizure claims. Indeed, Officer Suttle only argued for qualified immunity in a single sentence in the Motion's section on the Section 1983 false arrest claim. See (Doc. # 38 at 5)("Qualified immunity should also be granted to Suttle, as [Allen] has not alleged that Suttle personally participated in the arrest or was part of the chain of command authorizing the arrest action."). As Officer Suttle did not raise the qualified immunity issue for any other claims, Allen did not have a sufficient opportunity to respond regarding qualified immunity for those claims. Therefore, the Court makes no finding on whether Officer Suttle is entitled to qualified immunity for the remaining Section 1983 claims. The Court confines itself to the failure to state a claim arguments Officer Suttle raised for these counts.

more analogous to an investigative detention than a custodial arrest." Id. "Under [Terry v. Ohio, 392 U.S. 1 (1968)], an officer's actions during a traffic stop must be 'reasonably related in *scope* to the circumstances which justified the interference in the first place.'" Id. (quoting Terry, 392 U.S. at 20). "Furthermore, the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." Id. "The traffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." Id. (quoting United States v. Holloman, 113 F.3d 192, 196 (11th Cir. 1997)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed." Rodriguez v. United States, 575 U.S. 348, 354 (2015).

Because this claim relates to Allen's alleged detainment after the driver of the vehicle was arrested but before his own arrest, this claim is not duplicative of Count II for false arrest.

Also, the second amended complaint plausibly pleads a claim for an unreasonable seizure. The second amended complaint alleges that Officer Suttle stopped the vehicle in which Allen was a passenger for a DUI investigation, during

13

which time Allen was also detained. (Doc. # 35 at 3). It also alleges that Allen was not "free to leave the scene" even after the driver was arrested and placed in a police cruiser; instead, Officer Suttle "started berating and demeaning [] Allen for no reason at all." (Id. at 4). Although the second amended complaint does not explicitly allege the duration of the detainment, the detainment was long enough for Allen to ask "multiple times about the basis of his detainment" — a question Officer Suttle and the others failed to answer. (Id.). Furthermore, Allen has plausibly alleged that Officer Suttle was detaining him, as it is alleged that Officer Suttle initiated the investigation and was close and speaking to Allen much of the time. (Id. at 3-4).

At the motion to dismiss stage and given the fact-specific nature of analyzing the reasonableness of a seizure, the Court finds that Count X should survive. Accordingly, the Motion is denied as to Count X.

    **E.**    **Florida False Arrest Claims**

In Count VI, Allen asserts a claim for state law false arrest against Officer Suttle. (Doc. # 35 at 10). Likewise, in Count VIII, Allen asserts a claim for false arrest against the City for Officer Suttle's action under the theory of vicarious liability. (Id. at 11-12).

14

"Under Florida law, a claim for false arrest has three elements: (1) an unlawful detention and de[p]rivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention." Deegan v. City of Homestead, No. 16-22820-CIV, 2017 WL 11497366, at *7 (S.D. Fla. Feb. 10, 2017). "The gravamen of the tort of false arrest is the unlawful restraint of a person against that person's will." Id. (quoting City of St. Petersburg v. Austrino, 898 So. 2d 955, 957 (Fla. 2d DCA 2005)). "[T]o be liable for false arrest, a person must actively and personally participate, either directly or indirectly by procurement, in the unlawful restraint of another person against his or her will[.]" Id. (quoting Jibory v. City of Jacksonville, 920 So. 2d 666, 667 n.1 (Fla. 1st DCA 2005)). "Florida law permits a plaintiff to recover against a municipality on a theory of vicarious liability." Mbano v. City of St. Petersburg, No. 8:14-cv-1923-T-30TBM, 2016 WL 777815, at *3 (M.D. Fla. Feb. 29, 2016).

Allen fails to allege that Officer Suttle directly participated in Allen's arrest. (Doc. # 35 at 3-4). There is no allegation that Officer Suttle arrested Allen or physically restrained Allen during the arrest by Officer Pacheco. See Deegan, 2017 WL 11497366, at *8 ("[T]he Court

finds that the Complaint does not allege that Kent <u>directly</u> participated in Plaintiff's arrest. For example, it does not allege that Kent had any role in preparing the arrest warrant, physically restraining Plaintiff, or otherwise depriving Plaintiff of her liberty."). While Officer Suttle is alleged to have encouraged Officer Pacheco's arrest of Allen, Allen has not presented any case law in which an officer was held liable for false arrest under Florida law for being a supportive bystander.

Nor did Officer Suttle indirectly participate in the arrest, because he is not a private citizen who instigated Allen's arrest. <u>See</u> <u>Id.</u> ("[T]he Court finds that the Complaint does not allege that Kent <u>indirectly</u> participated in the arrest by procurement because the 'indirect procurement' theory of liability applies only to a <u>private citizen</u> instigating the arrest of another.").

Thus, Count VI against Officer Suttle is dismissed with prejudice.

Because Allen has not pled a plausible false arrest claim against Officer Suttle, he has not pled a plausible false arrest claim against the City based on Officer Suttle's actions. "Under Florida law, 'where an agent or employee is found to have no liability, then a judgment cannot stand

16

against the principal or employer on the basis of vicarious liability or respondeat superior.'" Hernandez v. Sosa, No. 11-21479-CIV, 2012 WL 4148890, at *7 (S.D. Fla. July 9, 2012)(quoting Molinda v. Watkins, 824 So.2d 959, 963 (Fla. 3d DCA 2002)). Therefore, Count VIII against the City is also dismissed with prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Corey Suttle's Motion to Dismiss Counts II, IV, VI, IX, and X of the Second Amended Complaint (Doc. # 38) is **GRANTED in part and DENIED in part**. Counts IX and X survive. Counts II, IV, and VI are dismissed with prejudice.

(2) Defendant City of Lakeland's Motion to Dismiss Count VIII (Doc. # 37) is **GRANTED**. Count VIII is dismissed with prejudice.

(3) Defendants' answers to the surviving counts are due within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

17